NO. 8816

COURT OF APPEAL 8816

PARISH OF ORLEANS

———————

MILTON SHIELDS

versus

ROCCA TRAMONTANA

———————

Dinkelspiel; **J.**

Plaintiff alleges that on the 16th day of June 1921, his horse and buggy was proceeding along the right side of the gravel road from Raceland Junction to Bayou LaFourche, when without warning, a large motor truck driven by defendant at a high rate of speed passed too close to plaintiff's said horse and buggy, the right side of the body of said truck which protruded over the side striking said horse behind the left foreshoulder, cutting a deep gash, from the effects of which she died two days later; and alleging that defendant was entirely at fault for said accident because he was passing too close to plaintiff's horse and buggy, was driving at a too high rate of speed when passing, he did not give seasonable warning of his intention to pass, and finally in not stopping the truck before the horse was hit; claiming damages in the sum of $196.80.

Defendant excepted to plaintiff's petition because it was too vague and indefinite, and further because it disclosed no cause or right of action, and if these exceptions were overruled, after denying various allegations made in plaintiff's petition answered further that on the date of the accident, defendant was driving his motor truck on the Raceland Road to Bayou LaFourche, and that in so driving defendant drove his truck past the horse and buggy some distance on the side, the horse harrnessed to the buggy turned and ran into defendant's truck, that the driver of the horse drove his horse carelessly and did not watch the road and the horse he was driving, if he had done this he could have checked and stopped his horse before it ran into defendant's truck, therefore whatever injuries plaintiff sustained were caused by the want of care and skill of the driver of the horse and buggy.

The witness testified substantially that he was the driver of the horse and buggy in question, that he was on the edge of the road going to Matthews and the truck was coming

161

behind; that he pulled as near the ditch as he could, the horse wanted to jump over the ditch, he swung back on the horse, the horse was on a slant, the truck continued on the road and that is how the horse came in contact with the truck, the horse was standing still, the truck was coming in the same direction that thxx the horse was going, and no warning of the truck coming, the chauffeur did not blow any horn, the horse was struck on the left shoulder, it carried him and the horse and buggy some distance, the harness broke loose from the buggy and the witness jumped out of the buggy, the horse was injured having a wound about ten inches long, the shaft and the side and back wheel of the buggy were broken and the harness was broken to pieces.

On cross examination he described the injury to the horse, stating that this was a common buggy, very small and used as doctors' buggies are when they are driving, the truck was coming at a pretty good speed and came right straight along, the horse was walking along slowly.

Alfred Gibson, another witness for plaintiff, who was on the road at the time the accident occurred, about one hundred and fifty feet from where it happened, asked to described what he saw of this accident, substantially says that the truck and buggy were going in the same direction, the truck came right on behind the horse and buggy about fifty feet and struck the horse, and when it struck the horse, the horse came back that way and the man in the buggy jumped out and the horse broke the harness and started to run away and three of them ran after him and carried him back up to the truck, the witness did not know the man that owned the truck, he was then picking up some boxes that were knocked off the truck, he further testifies the truck was going pretty fast and that the buggy was on the right side of the road, the truck was in the center of the road, did not kxxx hear any horn blow, the road where the accident occurred was wide enough for two trucks to pass on

on the same side and one in the middle, the truck knocked a hole in the horse's breast and witness says he could see all the insides moving; he further testifies that the truck had to pass the buggy before hitting the horse, the truck did not hit the buggy, it hit the horse and by the horse going over that turned the buggy and caused the damage to the buggy and broke the harness.

Another witness, Murray, corroborated the testimony of the former witness in almost every detail.

Milton Shields who was the owner of the horse and buggy testified to its value, knows nothing about the accident, testified to the condition of the horse and that it had to be killed, had owned the horse about six months paying $85.00 for him, the harness and shaft were old and he estimates their value at from ten to twelve dollars.

The testimony of the defendant in explanation of the accident substantially says that he was going towards Raceland with his truck and about a quarter of a mile ahead of him he saw a horse and buggy going in the same direction, he says he blew his horn, that he was in the center of the road and passed about one foot away, the horse got scared, swung into his truck, he hit right in the center of the truck, his truck had wings on the side, put there to place a load on the truck, so when the horse swung into the truck the back of the front shoulder got stuck on one of those wings, the horse was still going after he got hit and still swung to the left and knocked a box out from the tail gate of his truck with the shaft, the buggy upset, the horse broke loose and they went after him, says he blew his horn about forty feet from where the accident happened, he stopped after he hit the horse, he swears that before he hit the horse the horse swung into his truck towards the left, he could not stop his truck in time to prevent the accident but stopped about ten feet from where the accident happened.

163

On cross examination:

Q. As a matter of fact xxxxxxxxxx you took a narrow chance in passing that buggy? A. I had been passing so many buggies or automobiles and if it had stopped still I would not have hit the horse or buggy.

Q. Did you hit this one? A. The horse swung into me.

He further testifies that he was going about seven miles an hour.

By the Court:

Q. What is the condition of that road? A. Pretty good road.

Q. What kind of a truck xxxx were you driving? A. International truck, you can only go fifteen miles an hour when you are speeding, I never speed a truck when I have a load.

The last witness, Champagne, knows nothing at all about the accident, one way or the other.

A careful examination of this record satisfies us that this truck, having boxes on its sides, going in the same direction as the horse and buggy, was going behind, had a perfect view of the situation, saw the horse and buggy going slowly along and instead of stopping, took chances going ahead at a rapid rate of speed, without blowing his horn, and evidently the boxes on the side of his truck must have hit the horse which witnesses testify they did, and so doing, damaged plaintiff to such an extent that the horse had to be killed xxx a day or two after the accident, it is certain that if this defendant had blown his horn, had taken proper precautions either by stopping or otherwise, the accident would not have occurred; the driver of the buggy did everything in his power by turning the horse, he got as near to the ditch as it was safe for him to do, to avoid the accident, but could not. It is apparent therefore that defendant was to blame. The trial judge xxxxx saw and heard the witnesses and on questions of fact only when the evidence is conflicting, the judgment of the lower court will

not be disturbed.

3rd Court of Appeal, Piazza vs. Ratitich, 298.

"The chauffeur of an automobile on approaching from behind a vehicle going in the same direction, and intending to pass it, should sound his horn to warn the driver ahead of such intention."

Hart et al. vs. John Bonura & Co. 12 Ct. of App. 171.

"When a driver attempts to pass another on a public road he does so at his peril. At least he must be responsible for all damages which he causes to the one who he attempts to pass and whose right to the proper use of the road is as great as his, unless the latter is guilty of such recklessness or even gross carelessness as will bring disaster upon himself."

Avegno vs. Hart, 25 Ann. p. 235.

"The mere fact that the driver of a horse-drawn vehicle does not get out of the way of an automobile approaching from the rear at a high rate of speed does not warrant a finding of xxxxxxxxxxxx contributory negligence on his part."

Sec. 406, p. 566, Berry on Automobiles.

The plaintiff has asked for an amendment to the judgment of the lower Court, claiming a greater amount of damages than allowed by that court, but we think under after a careful review of all the testimony found in this record, that the judge aquo has done substantial justice and his judgment will be maintained.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment of the Court aquo be and the same is hereby affirmed, costs of both courts to be paid by the defendant.

-Judgment affirmed-